# Canfield, Appellant, *v.* Baltimore & Ohio Railroad Company.

*Negligence—Railroads—" Stop, look and listen "—Proper place to stop.*

The duty of one using a public highway and approaching a railroad crossing is to stop, look and listen, and the exigency arising from obstacles surrounding the crossing may on some occasions require such stopping to be at a point considerably distant from it, but where no such exigency exists, and where the view of the tracks becomes more extended by a nearer approach to them, the stopping at a point which is reasonably near and within which an extended view of the tracks may be had is clearly the requirement of the rule.

In an action against a railroad company to recover damages for personal injuries, sustained at a grade crossing, it appeared that plaintiff while driving stopped at a point 150 feet from the crossing. From this point he was able to see trains approaching from the east for a distance of 600 feet, intercepted for a short distance by a station building, and from the west several hundred feet. At a point sixty feet from the crossing a view of the trains approaching from the east was unobstructed for a distance of 445 feet, and approaching the crossing nearer it became more extended. Having stopped at a distance of 155 feet from it, plaintiff moved on at a walk toward it, without looking east, and having reached a point in close proximity to the tracks, the ends of the shafts of his buggy were struck by a train coming from the east, resulting in his being thrown out of his buggy, injured, and his horse running away. He testified that he did not see the train until it was within a short distance of him, because he was looking westward. *Held*, that a nonsuit was properly entered.

Argued Feb. 11, 1904. Appeal, No. 277, Jan. T., 1903, by plaintiff, from order of C. P. Delaware Co., Dec. T., 1903, No. 47, refusing to take off nonsuit in case of Thomas J. Canfield v. Baltimore & Ohio Railroad Company. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and THOMPSON, JJ. Affirmed.

Trespass for personal injuries.    Before SAVIDGE, P. J., specially presiding.

The circumstances of the accident are stated in the opinion of the Supreme Court.

*Error assigned* was order refusing to take off nonsuit.

*O. B. Dickinson,* for appellant.—Where there was a stop made the questions of proper place and whether there should have been a second stop are for the jury : Worthington v. P. & R. Ry. Co., 23 Pa. Superior Ct. 195 ; Kuntz v. N. Y., etc., R. R. Co., 206 Pa. 162; Doud v. Delaware, etc., R. R. Co., 203 Pa. 227 ; Bard v. Phila. & Reading Ry. Co., 199 Pa. 94; Cookson v. Pittsburg, etc., Ry. Co., 179 Pa. 184; Muckinhaupt v. Erie R. R. Co., 196 Pa. 213 ; Elston v. Delaware, etc., R. R. Co., 196 Pa. 595.

*W. B. Broomall,* for appellee.—A nonsuit was properly entered : Urias v. Penna. R. R. Co., 152 Pa. 326 ; Holden v. Penna. R. R. Co., 169 Pa. 1 ; Corcoran v. Penna. R. R. Co., 203 Pa. 380.

OPINION BY MR. JUSTICE THOMPSON, March 7, 1904 :

The appellant's failure to follow the rule to stop, look and listen at a proper point while approaching upon a public highway a crossing over the railroad of appellee, negatives his right to recover, and therefore the learned trial judge was clearly right in entering a nonsuit.

The appellant with his wife was riding along the public road which runs at right angles with appellee's railroad, and while approaching the crossing stopped at a point 155 feet from it. From this point he was able to see trains approaching from the east for a distance of 600 feet, intercepted for a short distance by a station building, and from the west several hundred feet.    At a point sixty feet from the crossing a view of the trains approaching from the east was unobstructed for a distance of 445 feet, and approaching the crossing nearer it became more extended.    Having stopped at a distance of 155 feet from it, appellant moved on at a walk toward it, without looking east, and having reached a point in close proximity to

the tracks, the ends of the shafts of his buggy were struck by a train coming from the east, resulting in his being thrown out of his buggy, injured, and his horse running away. He testified that he did not see the train in question until it was within a short distance of him because he was not looking eastward, the direction from which it came, that he was leaning forward, and looking westward, and again that he was looking the other way when the train came upon him and he substantially directed his whole attention to the west for a distance of more than sixty feet from the crossing. It is clear that if he had looked to the east when within a distance of fifty feet from the crossing he could have seen the train coming from that direction, and could manifestly have avoided the accident. The duty of one using a public highway and approaching a railroad crossing is to stop, look and listen, and the exigency arising from obstacles surrounding the crossing may on some occasions require such stopping to be at a point considerably distant from it, but where no such exigency exists, and where the view of the tracks becomes more extended by a nearer approach to them, the stopping at a point which is reasonably near and within which an extended view of the tracks may be had is clearly the requirement of the rule.

In the present case appellant stopped at a distance of 155 feet from the crossing and from such point to within sixty feet of it, and thereafter the view of the tracks continued to become more and more extended, and within the latter distance the view of an approaching train was such that if he had paid any attention to the trains from the east, he could have readily seen the train and avoided the collision, but he drove on until close to the tracks without stopping or looking in that direction and was then struck by its caboose which extended over the track some nine inches. With these facts established the conclusion of appellant's negligence became one of law and the learned trial judge was right in so determining it.

In the case of Corcoran v. Penna. Railroad Company, 203 Pa. 380, in which there were binding instructions, Mr. Justice Dean says: " An adult thoroughly familiar with the movements of trains at a crossing, knowing that it was about time for a train coming from the east, drives to within fifty feet of the tracks, stops and looks east but sees nothing because of a

temporary obstruction to seeing in that direction, then rushed across and is struck by a train coming from the direction where he could not see; if this be not a deliberate taking of great risks rather than submit to a slight delay, we do not know what it is. It is one which the ordinary prudent man would not take, and there is no other reasonable inference to be drawn from his conduct. It was not care according to the circumstances; the plaintiff's own evidence disclosed a case of contributory negligence. The language of the learned judge of the court below, in the concluding paragraph of his opinion on the motion for a new trial, states the controlling facts with precision.

" The plaintiff himself says that he made but one stop and when asked, ' You did not look east again after you started?' answered, ' I might have looked that way,' while all the witnesses who testified upon the subject say that he looked continuously to the west, and that such was undoubtedly the fact is evident from his driving directly in front of the train that he must have seen at any time after passing the baggage room had he looked to the east."

In Holden v. Pennsylvania Railroad Company, 169 Pa. 1, Mr. Justice GREEN in considering Myers v. B. & O. Railroad Company, 150 Pa. 386, and Urias v. Penna. R. R. Co., 152 Pa. 326, said :

" In the case of Myers v. B. & O. R. R. Co., 150 Pa. 386, the same doctrine was applied to a person attempting to cross the track in a wagon. Our Brother WILLIAMS, delivering the opinion said : " The plaintiff says he complied with the rule. At about fifteen or twenty feet from the track he says he stopped his team, looked each way along the railroad and listened, and that he neither saw nor heard a train approaching. He then drove on and while upon the track was struck and injured. If this is true he did all the rule requires and all that is possible to be done. Is it true ? This question the court below left to the jury, and they promptly found that it was true. . . . The fact that four or five seconds after he says he looked and listened he was struck by a train that must have been plainly visible and almost on him at the time he alleges he looked, is so palpably and absolutely irreconcilable with the truth of his statement that he did stop, look both ways and listen, be-

fore driving upon the crossing that it is trifling with justice to permit a jury to find that it is true.   Such a finding is absurd. It is simply and flatly impossible that one can stop, look and listen for an approaching train that is in plain view and close at hand and be unable to see or hear it, if he possesses the sense of sight and hearing.

In the case of Urias v. Penna. R. R. Co., 152 Pa. 326, the rule was again enforced against a person traveling in a wagon who was struck and killed the moment his horse stepped upon the track.   The previous decisions were recognized and re-affirmed.   There is no difference therefore in the application of the doctrine as between foot passengers and carriage passengers.   In either case if the person injured testifies that he stopped and looked both ways and listened and neither saw nor heard an approaching train, yet in fact he is struck and injured the moment he or his horse gets upon the track, it is conclusive proof that he could not have used his senses and he cannot recover."

As appellant did not stop, look and listen as required by the rule, he was clearly not entitled to recover.

The assignment of error is not sustained and the judgment is affirmed.