## Tozer *v*. Altoona & Logan Valley Electric Railway Company, Appellant.

*Negligence—Street railways—Death—Contributory negligence—" Stop, look and listen."*

1. Where a street railway company operates a street car on the main street of a borough at a speed of from fifteen to twenty miles an hour, with no headlight, and no gong rung at an intersecting street, and a pedestrian is killed, there is sufficient evidence of the company's negligence to submit to the jury; but if it appears from the uncontradicted testimony that the deceased had an unobstructed view along the track for a distance of from 600 to 800 feet in the direction from which the car came, and that if he had looked he could have seen the car in time to save himself, no recovery can be had for his death.

2. While the rule to stop, look and listen, applicable to the crossing of steam roads applies only in part to the crossing of street railways, there is always the duty to look for an approaching car, and if the street is obstructed, to listen and in some situations to stop. It is vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving car, whether it be a steam locomotive or an electric car.

Argued Oct. 24, 1910. Appeal, No. 132, Oct. T., 1910, by defendant, from judgment of C. P. Blair Co., March Term, 1910, No. 356, on verdict for plaintiff in case of Margaret Tozer v. Altoona & Logan Valley Electric Railway Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for death of plaintiff's son. Before BALDRIDGE, P. J.

The facts relating to the accident are set forth in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $802.86. Defendant appealed.

*Errors assigned* were various rulings and instructions.

*Thos. H. Greevy*, with him *E. G. Brotherlin*, for appellant.—Stepping in front of a moving car plainly visible

rebuts presumption of compliance with legal duty and convicts party of contributory negligence: Trout v. Electric Ry. Co., 13 Pa. Superior Ct. 17; McCartney v. Traction Co., 27 Pa. Superior Ct. 222; Carroll v. R. R. Co., 12 W. N. C. 348; Dix v. Ry. Co., 15 Pa. Superior Ct. 350; Watkins v. Traction Co., 194 Pa. 564; Yevsack v. R. R. Co., 221 Pa. 493; Sullivan v. Traction Co., 198 Pa. 187; McCauley v. Traction Co., 13 Pa. Superior Ct. 354; Hamilton v. R. R. Co. of New Jersey, 227 Pa. 137.

*A. V. Dively*, of *Dively & Dively*, for appellee.—The question of the decedent's contributory negligence was for the jury: Cromley v. R. R. Co., 208 Pa. 445; McNeal v. Ry. Co., 131 Pa. 184; Muckinhaupt v. R. R. Co., 196 Pa. 213; Doud v. Del., etc., R. R. Co., 203 Pa. 227; Hall v. Ry. Co., 13 Utah, 243 (44 Pac. Repr. 1046); Thompson v. Rapid Transit Co., 16 Utah, 281 (52 Pac. Repr. 92); Marden v. Ry. Co., 100 Maine, 41 (60 Atl. Repr. 630); Benjamin v. Ry. Co., 160 Mass. 3 (35 N. E. Repr. 95).

OPINION BY ORLADY, J., March 3, 1911:

A son of the plaintiff was killed by a car of the defendant company, while he was crossing its tracks on a main street in the borough of Bellwood. A verdict was rendered in favor of the plaintiff and the court below refused to grant a new trial, or enter a judgment non obstante veredicto, hence this appeal by the defendant.

The validity of this verdict is to be determined by the application of well defined and frequently declared rules of the law to certain facts which are established by the testimony of the witnesses called by the plaintiff. The accident occurred about 11:30 P. M. while the deceased was crossing the car tracks, which were laid on a wide public street of a borough at a point where it intersected another street. Three of his companions had preceded him in safety. Immediately over the crossing there was suspended an electric light, which cast a reasonably good light of a radius of sixty to seventy feet. The car track

approach to this crossing was in a straight line, and the view along it, in the direction from which the car came, was unobstructed for a distance of from 600 to 800 feet. It was alleged by the plaintiff that the car was running at a speed of from fifteen to twenty miles an hour, and that the headlight on the car was not lighted nor the gong rung. The overwhelming weight of the evidence shows that the lights inside the car were burning—else it could not be run.

The evidence on this branch of the case was amply sufficient to send the case to the jury, in support of the allegation of the defendant's negligence, but the evidence of the deceased's contributory negligence is so clearly established that the plaintiff is not entitled to recover.

The night was dark and foggy; these conditions imposed on him the duty of being proportionately careful before he entered upon the car track. Samuel Sheets, who had crossed over in safety immediately before the deceased started to do so, a witness for plaintiff, testified:

"Q. Wouldn't that car even without a headlight be visible at least 250 feet up the street through the glare of this electric light? A. I suppose it would if you were looking in that direction, but a man not thinking of the car, or anything like that, would not be looking for a car. Q. Were you looking for a car with no headlight? A. No, sir, I wasn't, but it was plainly to be seen. Q. If he (Tozer) had his normal sight, and had looked, couldn't he have seen the car up the street a distance of at least 250 feet, admitting that there was no headlight on it? A. If he had been looking that way, if he would have been going that way."

Leroy McMullen, another of the party, testified: "Well, I think we stopped right on the corner, it was right on the Henderson corner, we may have been down on Boyles street a foot or two. Q. Did you see the car approaching? A. Yes, sir, I believe I noticed it coming; I didn't pay any attention to it. Q. How far up that street could that car be seen? A. Well, if the street had been lit up the whole

way up, I suppose you could have seen the car 400 feet maybe. Q. The arc light was lit there? A. There was a light on the crossing. Q. How far above the crossing did the light reflect? A. Well, I suppose it lit the crossing. Q. It lit both crossings? A. I would call the crossing where one street crosses the other. Q. The first that you saw the car was when it was above the crossing in the direction of Altoona? A. Yes, sir. Q. If Mr. Tozer was coming across that crossing, isn't it likely that you would have seen him, because you say, you saw the car above the upper crossing? A. I noticed the car coming down. Q. Wasn't your back to Mr. Tozer? A. Yes it was; it must have been, you know the streets are wide there, and I could see the car coming, and still not see Mr. Tozer, over here on the crossing. Q. Was the car lighted up? A. There was light inside of the car. Q. The usual lights? A. Yes."

And Ralph Fagley, another one of the party who had just crossed the track, testified: "Q. Where were you standing when the car passed? A. I was standing with my back to the car, and just about the time the car was at the other corner, I turned around, and was looking at the car. Q. That was about fifty feet distant? A. Yes, sir. Q. Was the car lighted up? A. Yes, I didn't notice whether there was a headlight on the car, or whether there was not, I know the lights inside the car were lit, because I looked to see who was in the car. Q. How far could you see it? A. I didn't see the car until it was there at the street, I would judge that a man that had a good eye could see it quite a distance. Q. At any rate, if you look up the street, you could see it about 200 feet? A. Yes, I guess you could see it that far all right. Q. If you were standing in the middle of the street at Boyles street (where the accident happened) you could see a car approaching a distance of about 500 feet? A. Yes, you could see it near about that I guess, if you were standing there looking for it."

The above facts were elicited from the friends and associates of the decedent who were waiting for him on the opposite side of the car track. There was no business

activity on the street to divert his attention and no intervening objects to obstruct his view.  The sound of the rapidly moving car, independent of gong or headlight would, reasonably and naturally have given some notice of its approach.  Measured by the faculties of his associates had he looked or listened he would have seen or heard the car in ample time to avoid the accident.

Eliminating the direct and positive testimony of the defendant's witnesses that all the lights were properly lighted, that the gong was sounded, that the decedent darted right out from the side on to the track, and that the car was not going more than at a rate of eight miles an hour, yet by plaintiff's own showing, she is not entitled to recover.  A person who walks in front of a moving car, which he sees or could have seen by the exercise of the reasonable care, which the law requires, will be conclusively presumed to have been negligent.

While the rule to stop, look and listen, applicable to the crossing of steam roads applies only in part to the crossing of street railways, there is always the duty to look for an approaching car, and if the street is obstructed, to listen and in some situations to stop.  It is in vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving car, whether it be a steam locomotive or an electric street car.  It was the imperative duty of the deceased to follow these rules, and he was evidently lulled into a false sense of security, or was for the moment indifferent to his danger, and unwittingly stepped on the car track without exercising the required precautions, or took his chance of passing the track before the car would reach him.

No error in a close calculation of a chance can relieve from the charge of contributory negligence.  He must be held to have seen what was manifestly obvious: Trout v. Electric Ry. Co., 13 Pa. Superior Ct. 17; Ormslaer v. Traction Co., 168 Pa. 519; Potter v. Scranton Railway Co., 19 Pa. Superior Ct. 444; McCartney v. Union Trac-

tion Co., 27 Pa. Superior Ct. 222; Sullivan v. Traction Co., 198 Pa. 187; Yevsack v. Lackawanna & Wyo. Val. R. Co., 221 Pa. 493; Hamilton v. C. R. R. R. of New Jersey, 227 Pa. 137.

The judgment is reversed, and judgment is now entered in favor of the defendant.